**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JOHN JACKSON,

                 * 

        PETITIONER

                 *      Case No.:  CCB-15-CV-0021

    v.

                 *

TOWN OF VIENNA, et al.,

                 *

        DEFENDANTS.

                 *

*    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

     Defendants, DORCHESTER COUNTY DEPARTMENT OF FINANCE, COMMISSIONERS OF THE TOWN OF VIENNA, MAYOR RUSSELL BRINSFIELD, COMMISSIONER PAM TRAVERS, COMMISSIONER GREG CUSICK, SECRETARY MARCIA GOSNELL and CODE ENFORCEMENT OFFICER MARY JANE MARINE, by and through their attorneys, KARPINSKI, COLARESI & KARP, P.A., KEVIN KARPINSKI and E. I. CORNBROOKS, IV, offer this Memorandum of Law in Support of their Motion for Summary Judgment and further state:

**INTRODUCTION**

     Petitioner asserts that his right to due process was violated when "his" property was connected to the Town of Vienna's water supply because he was not informed of the potential consequences for failing to pay his water bill.[1] **At the time the subject property**

---

[1] Mr. Jackson calls his complaint a Petition and utilizes the term "Petitioner" to describe himself rather than the term "Plaintiff." Defendants will refer to the complaint as a Petition and Mr. Jackson as Petitioner, while referring to themselves as Defendants.

**was connected to the Town's water supply, Petitioner did not own it.**  Additionally, the

<u>connection was mandatory for public health reasons</u>.  Thus, even if there was an obligation

to inform the property owner that the property could be auctioned at tax sale if the water

bill was not paid, which there was not, Petitioner was not the property owner at the time

of the connection and the connection was mandatory.

### FACTS

Petitioner filed the present action seeking injunctive relief only on January 5, 2015.

He does not seek monetary damages.  ECF 1, p. 5.

Petitioner alleges that he was not informed that a potential consequence of

connecting his property to the Town of Vienna's water supply might be that his property

would be auctioned at a tax sale as a result of a failure to pay his water bill.  ECF 1, pp. 2-3.

Petitioner further asserts that this failure to inform him violates his right due process

protected by the Fifth and Fourteenth Amendments.  ECF, pp. 4-5.

Petitioner asks this Court to enjoin the Dorchester County Department of Finance,

the Commissioners of the Town of Vienna, Mayor Russell Brinsfield, Commissioner Pam

Travers, Commissioner Greg Cusick, Secretary Marcia Gosnell and Code Enforcement

Officer Mary Jane Marine from applying his Calendar Year 2012 past due water bill

amounts to his tax bill for collection.  ECF 1, p. 5.

### I.      Connecting West Vienna to the Town's Water System

In 1998, the Town of Vienna (hereinafter the "Town") extended its water lines

<u>outside the municipal boundaries</u> to an unincorporated area in Dorchester County,

Maryland (hereinafter the "County") known as West Vienna.[2]  2003 Greater Vienna Comprehensive Plan, p. 75. a copy of the relevant pages are attached hereto and incorporated herein as Exhibit 1.   Pursuant to the West Vienna extension in 1998, Petitioner's property (4853 Old Route 50, Vienna, Maryland and hereinafter the "Property") was connected to the Town's water supply no later than the spring of 1999.[3]  *See* Memorandum from Dorchester County Health Department's Director of Environmental Health Division, William Forlifer, to Grant Coordinator, Valerie Mann, dated May 25, 1999, a copy of which is attached hereto and incorporated herein as Exhibit 2.[4]

The meeting minutes of the Town Commissioners (hereinafter "Minutes") indicate that discussions about extending the Town's water and sewer lines to West Vienna began

---

[2] West Vienna was known as "Rabbit Town" or "Rabbittown" until 1994 or 1995 and the attached documentation contains references to all three names.

[3] A grant was obtained to pay for a plumber to connect the individual residences to the Town's water lines that were run from the Town to West Vienna and along Old Route 50.  *See* Letter from Valerie Mann to Director Forlifer dated August 11, 1998, a copy of which is attached hereto and incorporated herein as Exhibit 3; *see also* a copy of the document entitled West Vienna Residents – CBDG Program, attached hereto and incorporated herein as Exhibit 3A.

[4] In August, 1998, the Grant Coordinator had written to Director Forlifer and indicated that she had not received any paperwork from two properties to obtain grants to pay for the connection of the Property to the Town's water supply.  Ex. 3.  One of those properties was Emily Jackson's, the Property at issue in this case.  Ex. 3.  Obviously, the paperwork was submitted, the funding provided and her property connected because her well was sealed approximately nine months later.  Ex. 3.

prior to February 14, 1994.[5]  Copies of relevant portions of the Town of Vienna's meeting

minutes are attached hereto and incorporated herein as Exhibit 4.[6]  In February, 1994, the

Town became aware of iron and a high bacteria count in residences sampled in the West

Vienna area as a result of a survey conducted by the Dorchester County Health

Department (hereinafter "Health Department").  "Windshield Survey" of West Vienna and

cover letter dated February 1, 1994, a copy of which is attached hereto and incorporated

herein as Exhibit 5; Ex. 4.25.  The Town and the Health Department were actively working

to address the issues with the water and sewer supply in West Vienna.  The Minutes

demonstrate that the decision was made to proceed with the project if funding could be

obtained and that the Town spent approximately two years attempting to fund the project.

Ex. 4.7-8, 4.10-23.

The Town received considerable public input throughout this process.  Indeed, **on
November 14, 1994, Emily Jackson, the owner of the Property at the time, spoke to the
Town Commissioners and voiced her opposition to the project**.  Ex. 4.18.  On May 27,

1996, the Town held a hearing regarding the funding of the project to correct issues with

---

[5] In the late 1980s, issues with the functioning of the Town of Vienna's sewer system came to the attention of Maryland's Department of the Environment ("MDE").  As a result of the issues with the wastwater treatment plant ("WWTP"), the Town and MDE entered into a Consent Order in December, 1991.  Around the time the Town was completing the requirements set forth in the Consent Order, the need to provide water and sewer for the area known as West Vienna came to a head.

[6] Exhibit 4, which contains excerpts from Town's meeting minutes, contains twenty-five pages which are Bates numbered 0001-0025.  Thus, when specific page numbers are referenced in Exhibit 4, they will be identified herein as Ex. 4.1 or 4.7 and so on.  This is done to avoid unnecessarily inserting the extra zeros in the Bates numbering.

the Town's water and sewer system and connecting the area of West Vienna.  Ex. 4.12.

Public comments were made and a question and answer session took place.  Ex. 4.12.[7]

In order to assist the Town in extending the water system outside its municipal

boundaries to West Vienna, Dorchester County agreed to reimburse the Town up to fifty

thousand dollars ($50,000.00) annually in delinquent water accounts.  March, 1997,

Memorandum of Understanding Between Dorchester County and Town of Vienna, a copy

of which is attached hereto and incorporated herein as Exhibit 6; *see also* Ex. 4.4-6.  The gist

of the Memorandum of Understanding (hereinafter "MOU") between the Town and the

County is that after an account is delinquent for three months, the Town is entitled to

payment from the County and the burden to collect the past due amounts falls upon the

County.  Ex. 6.  The MOU between the Town and County is still in effect.

In July, 1998, the Health Department sent form letters to the residents in West

Vienna explaining that they were **required** to connect to the Town's water supply for

health related reasons.  A copy of that form letter is attached hereto and incorporated

herein as Exhibit 7; *see also* Letter from Director of Environmental Health to Mayor of

Vienna dated June 26, 1997, attached hereto and incorporated herein as Exhibit 7A (stating

that "the project is to correct an existing health hazard due to improperly functioning

individual water supplies and sewage disposal systems.").  The form letter also explained

---

[7] At the time of the May 1996 meeting, funding existed for the water upgrade and extension only.  Ex. 4.12. This funding included grant money to connect the West Vienna residences to the water line to be installed along Old Route 50 and extended from the Town of Vienna.  Ex. 4; *see also* Ex. 1 water system map for a visual reference.

the process for connecting, sealing wells, emptying and filling septic tanks and emptying and filling privies.[8]  Ex. 7.

Ultimately the Property was connected to the Town's water supply by May 25, 1999. Ex. 2.[9]

## II.   Petitioner Did Not Own the Property Until 2011.

Petitioner did not own the Property until April 15, 2011, when his mother Emily J. Jackson passed away.  On February 27, 2002, Emily J. Jackson caused a deed to be recorded that conveyed the Property, **subject to Emily Jackson's life estate**, to Petitioner, Clarence Edward Jackson and Tina Lavon Thompson as joint tenants forever in fee simple.  A copy of the Deed dated February 27, 2002, conveying the Property to Petitioner, Clarence E. Jackson and Tina L. Thompson, the State of Maryland Land Intake Sheet and a printout from the State Department of Assessment's and Taxation for the subject Property are collectively attached hereto and incorporated herein as Ex. 9.  Thus, **Petitioner's one-third joint tenancy did not vest until Emily Jackson's passing** on April 15, 2011.  *See* Obituary of Emily J. Jackson, a copy of which is attached hereto and incorporated herein as Exhibit 10.[10]

---

[8] A privy is an outhouse.

[9] Connections and funding for several properties were still being coordinated and processed through at least the Spring of 1999.  Memorandum to File of William Forlifer dated February 23, 1999, and Article from the Dorchester Banner dated February 23, 1999, copies of which are attached hereto and incorporated herein as Exhibit 7.

[10] Additionally, Petitioner did not reside at the Property for much of the relevant time period.  In July, 1996, Petitioner pleaded guilty to possession of cocaine with intent

III.    **The Past Due Water Bill.**

In 2012, the Property's water and/or sewer bill (hereinafter "water bill"), identified as being sent to Clarence Jackson, one of the Property's owners who is not a party to this suit, was past due in the amount of six hundred forty dollars ($640.00).  *See* Town of Vienna Statement for West Vienna Past Due Water Bills a copy of which is attached hereto and incorporated herein as Exhibit 11.   In accordance with the MOU, the Town turned the account over to the County for collection at the end of calendar year 2012 and was reimbursed for that amount.  *See* Town of Vienna Bank Statement (Account Number Redacted) Dated August 30, 2013, a copy of which is attached hereto and incorporated herein as Exhibit 12.[11]

In August, 2013, the County issued a notice to the Property that the $640.00 was to be paid to the County and that a failure to pay the past due amount may cause the Property to be sold at tax sale.  August 7, 2013, letter from Dorchester County Director of

---

to distribute in the Circuit Court for Dorchester County, Maryland.  *State of Maryland v. John Douglas Jackson*, Case No.: 09K95008761.  A review of the docket indicates that Petitioner was incarcerated, but the State Court docket does not reflect the length of his sentence.

On November 20, 2000, Petitioner was sentenced in this Court to more than fifteen years  in prison to run concurrent with the sentence imposed by the Circuit Court for Dorchester County.  *United States of America v. Doe, et al.*, 1:97-cr-00246-BEL-2, Docket No.: 141.  In 2009, Petitioner's federal sentence was later reduced to more than twelve years. *Id.* at Docket No.: 236.  Thus, it appears that the Petitioner was released in approximately 2012, depending on the application of credits for good time.

[11] The payment to the Town from the County was deposited on August 5, 2013, and the amount, fourteen thousand, three hundred forty-seven dollars and fifty cents ($14,347.50), *see* Ex. 12, is the identical amount identified as being owed to the Town in Ex. 11.

Finance to Property owners, a copy of which is attached hereto and incorporated herein as Exhibit 13. As of April 14, 2015, the County has not placed the Property up for tax sale. *See* Dorchester County Tax History Inquiries dated April 14, 2015 for 2013-14 & 2014-15, copies of which are collectively attached hereto and incorporated herein as Exhibit 14.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The Supreme Court has emphasized that this does not mean the existence of any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

As such, a party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ihken v. Gardner*, 927 F.Supp. 2d 227, 235 (2013) (quoting *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (some quotation marks removed)). While the Court is required to view the facts and draw reasonable inferences in a light most favorable to the party opposing summary judgment, the Court is required to "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding

to trial.'"  *Ihken*, 927 F.3d at 235 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

There are no material facts in dispute in the present case.

## ARGUMENT

Defendants are entitled to summary judgment as a matter of law because Petitioner did not own the Property at the time it was connected to the Town's water supply for public health reasons.  As such, his due process rights were not violated and an equitable remedy cannot be fashioned in this context.  Additionally, none of the named Defendants is a proper party.

## I.     Petitioner Did Not Own the Property at the Time of the Alleged Wrong.

It cannot be disputed that Petitioner's Property was connected to the Town of Vienna's Water Supply by the spring of 1999 for public health reasons.  It also cannot be disputed that Petitioner did not own the Property until April, 2011.  Thus, Petitioner's allegation that he should have been informed of the potential consequences of failing to pay the water bill prior to the Property being connected to the Town's water system is unfounded.  Assuming *arguendo* that the Town was required to notify the Property owner of the potential consequences of failing to pay the water bill prior to 1998-99 when the Property was connected, which it was not, the Town could not have informed Petitioner because he did not have an ownership interest in the Property at that time.  Therefore, as a matter of law, the Defendants should be granted summary judgment.

II.     **The MOU Between the County and the Town and Applicable Law Require this Court to Grant Summary Judgment As a Matter of Law in Favor of the Defendants.**

A.     **The MOU and Applicable Law Authorize Petitioner's Property to be Sold at Tax Sale for Failing to Pay the Water Bill.**

In 1997 the Town and County entered into an MOU that requires the County to reimburse the Town up to $50,000 for delinquent water accounts in West Vienna.  The MOU also requires the County to take on all collection responsibilities for the Town.

Under current law, the MOU is almost redundant.[12]  Maryland Code, § 9-724 of the Environment Article enables municipalities to place a lien on property for unpaid water fees, charges and interest, all of which are *collectible in the same manner as taxes* in Dorchester County.[13]  § 9-724( c)(4).  Dorchester County Code, consistent with § 9-724( c)(4), provides

_____

[12] The aspect of the MOU that is not redundant is the requirement for the County to reimburse the Town for delinquent accounts up to $50,000, leaving the County to collect or not collect the past due amounts.  Under the Statute, the Town would not be reimbursed until after the tax sale.

[13] Maryland Code, § 9-724 of the Environment Article states in relevant part:

(a) The rates for water service shall:

   (1) Be based on estimates of the amount of water used by the types of users specified in the     rates; and

   (2) Consist of:
           (i) A minimum charge based on the size of the meter on the water connection leading to the property; and
           (ii) A charge for water used, based on the amount of water passing through the meter during the period between the last 2 readings.

(b)(1) At its own expense, the political subdivision shall place a meter on each water connection.

    (2) If the political subdivision does not have meters available to install in

that water liens and any liens arising in favor of the County are first liens against the

owner's real property and collected in the same manner as County real property taxes.

Dorchester County Code, § 107-1, a copy of which is attached hereto and incorporated

herein as Exhibit 15.  That collection process, however, is governed by State Code.  *See*

---

all property that is connected to the system in a locality, the political subdivision shall charge a flat rate to all property in which meters are not installed.

(c)(1) The political subdivision shall send bills for water service to the property, the property owner, or the property owner's designee for each property served on a monthly, every other month, quarterly, or semiannual basis.

(2) The bills are payable at the office of the political subdivision on receipt.

(3) If any bill remains unpaid after 30 days from the date the bill is sent, the political subdivision shall:

(i) Notify the owner of the property served, in writing, that the bill is in arrears and that water service will be discontinued;

(ii) Leave the notice on the owner's property or mail the notice to the last known address of the owner; and

(iii) Discontinue water service to the property until the owner pays the bill and a reconnection charge reasonably related to the cost of reconnection, as established by ordinance of the governing body of the county or municipal corporation in which the water service is provided.

(4) If any bill remains unpaid after 60 days from the date of sending the notice:

(i) The bill and the penalty imposed under paragraph (3)(iii) of this subsection shall be collectible from the property owner in the same manner and subject to the same interest as taxes are collectible in the county in which the water or sewerage system lies; and

(ii) The water service charges and all penalties shall be a first lien on the property. . . .

§ 9-724 of the Environment Article.  Past due sewer charges also may be converted to liens collectible in the same manner as real property taxes.  § 9-724 of the Environment Article

*generally* Maryland Code, Tax-Property Article Tax-Property Article; *PNC Bank, National Association v. Braddock Properties*, 215 Md.App. 315, 322-24, 81 A.3d 501, 506-07 (2013) (discussing the tax sale process and the right of redemption). Thus, once Petitioner's water fees are converted to a lien on his real property, they fall under the provisions of State Code generally and the Tax-Property Article specifically and may be collected pursuant to tax sale.

The process outlined above was followed in the present case. In 2012, the Property's water bill was past due in the amount of $640.00. Ex. 11. In accordance with the MOU, the Town turned the account over to the County for collection at the end of calendar year 2012 and was reimbursed for that amount in August, 2013. *See* Exhibits 11 & 12. Also in August, 2013, the County issued a notice to the Property that the $640.00 was to be paid to the County and that a failure to pay past due amount may cause the Property to be sold at tax sale. Ex. 13. The collection pursuant to the tax sale process has not commenced as of this writing.

**B.     Petitioner's Right to Due Process has Not Been Violated.**

In order for Petitioner to succeed in his procedural due process claim, he must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009)(internal quotations omitted). Procedural due process simply ensures a fair process before the government may deprive a person of life, liberty, or property, *Wolf v. Fauquier*

12

*Cnty. Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir. 2009), but "does not require certain results," *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 436 (4th Cir. 2002)(emphasis added).

Petitioner did not own the Property until 2011. Petitioner asserts, essentially, that he was not fully informed of the potential consequences for failing to pay his water bill when he "agreed" to connect to the Town's water supply. Setting aside for the moment that the decision to connect West Vienna to the Town's water supply and the existence and terms of the MOU were publically discussed by officials in the Town of Vienna for years prior to the connection and that the connection was not optional, Petitioner would not have had any reason to be informed **because he did not own the Property until 2011–thirteen years after the project was completed**. Additionally, it appears Petitioner was incarcerated from 1996 until approximately 2012. Thus, after an ownership interest was conveyed to him in 2011 it seems likely Petitioner would have relied on the other Property owners or his representatives, **none of whom are parties to the present action**, to be informed and make decisions on his behalf regarding the Property.[14] Thus, at the time of the alleged wrong, Petitioner did not have a property interest.

As of this writing, Petitioner has not been deprived of any property and there can

---

[14] Petitioner's assertion that he was not adequately informed of the law cannot be countenanced by this Court. Ignorance of the law is not a basis for seeking relief for failing to comply with it. State Code is clear about the potential consequences for failing to pay one's water bill.

be no due process violation.[15]  Even if there is a deprivation of Petitioner's property rights,

which there is not, the Town did everything in its power to ensure the citizens were

informed of the policies regarding the West Vienna connections.  Prior to connecting the

area of West Vienna to the Town's water supply, the Town held at least two meetings

regarding the issue of connection as well as numerous other meetings in which discussions

regarding connecting West Vienna were held.  Indeed, the parameters of the MOU between

the Town and the County was discussed in not less than three Town meetings.  The MOU

itself is a public record and available to be reviewed by the public.

Finally, the tax sale process provides for post-deprivation remedy through the

process of redemption.  *See PNC Bank, National Association v. Braddock Properties*, 215

Md.App. 315, 322-24, 81 A.3d 501, 506-07 (2013) (explaining the real property tax sale

process in Maryland).[16]

───────────────

[15] Obviously Petitioner is aware of the potential consequences of failing to pay his
water bill because he has filed the present lawsuit asking the Court to prevent his property
from going to tax sale.  He is, therefore, on notice of the potential consequences for failing
to pay his water bill.

[16] Petitioner does not assert whether he is alleging a procedural or substantive due
process violation although from context it seems to be a procedural due process claim.  Out
of an abundance of caution, Defendants will briefly explain why a substantive due process
claim also fails.  As the Court knows, in order to state a substantive due process claim,
Petitioner must (1) that he had a property or property interest, (2) that the state deprived
him of the property or property interest and (3) that the state's action falls so far beyond
the outer limits of legitimate governmental authority that no process could cure the
deficiency. *Sunrise*, 420 F.3d at 328; *Sylvia*, 48 F.3d at 810.  The Fourth Circuit in *Sylvia*
stated that the:

[P]rotection of substantive due process is indeed narrow and covers only
state action that is so arbitrary and irrational, so unjustified by any

**C.     This Court Cannot Fashion Injunctive Relief in the Context of this Case.**

Injunctive relief is an extraordinary remedy, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982), and the grant or denial of it is within the sound discretion of the District Court.  *Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 392 (4th  Cir. 2001).  To obtain injunctive relief, a plaintiff must demonstrate (1) that he has suffered an irreparable injury, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) that considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted, and (4) that the public interest would not be disserved by an injunction.  *Christopher Phelps & Associates, LLC* v. *Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).  The standard for injunctive relief is in the conjunctive.  If any one of the elements of the standard cannot be met, injunctive relief may not be granted. In the present case, none of the four are met.

In the present case, Petitioner has not suffered any injury let alone an irreparable

---

circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate post-deprivation state remedies. . . .

*Sylvia*, 48 F.3d at 827 (citations removed) (quotations removed).  For the reasons already stated, he had no property interest and he was not deprived of the property interest.  Even if he did have a property interest and was deprived of it, the societal need for governmental entities to collect for unpaid water bills (which support the infrastructure that provides clean drinking water) is significant.  Additionally, the process by which Petitioner's property may be sold is replete with pre-deprivation and post-deprivation procedural protections.  Therefore, to the extent Petitioner has asserted a violation of his substantive due process rights as a basis for seeking injunctive relief, Defendants are entitled to summary judgment.

injury.  Petitioner has only been asked to pay his water bill in accordance with applicable law.  At least three months passed without payment and, in accordance with the MOU, which is consistent with State law, the Town forwarded Petitioner's account to Dorchester County for collection.  Moreover, Petitioner does not deny that he owes the amount at issue ($640.00).  It would be logically inconsistent for this Court to provide equitable relief to an individual who is acting outside the bounds of applicable law.

The last two elements of injunctive relief, the balance of hardships and public interest, also weigh against granting the injunction.  It is the citizens of Dorchester County and the Town of Vienna which are injured by Petitioner's failure to pay his water bill.  An injunction would not alter that balance.  Even if the Court were to conclude that enjoining the collection of the amounts past due would be less burdensome on the citizens and the local governments, there is no basis for concluding that the public interest would be served by such an injunction.  State law, in the interest of protecting all citizen water users, requires payment for water service.  Water service allows the water users, to include Petitioner, to have safe, clean and healthy drinking water which prevents a host of other potential health problems that arise out of unclean drinking water.  Those potential health problems affect all citizens--not just Petitioner.  Allowing Petitioner to avoid payment by granting an injunction would undermine the public interest.  Therefore, the request for injunctive relief should be denied and summary judgment should be granted in favor of the Defendants.

**III.     No Defendant is a Proper Party.**

Petitioner named the following Defendants:  Dorchester County, Department of Finance, the Commissioners of the Town of Vienna, Mayor Russell Brinsfield, Commissioner Pam Travers, Commissioner Greg Cusick, Secretary Marcia Gosnell and Code Enforcement Officer Mary Jane Marine.  For the reasons set forth, *supra*, and for the reasons set forth in this Part III of Defendants' Memorandum, no Defendant is a proper party.

**A.     Dorchester County, Maryland, Department of Finance is Not a Legal Entity.**

The Dorchester County, Maryland, Department of Finance is not a legal entity capable of being sued.  *See Smith-Berch, Inc. v. Baltimore Cnty.*, 68 F. Supp.2d 602 (D. Md. 1999) (finding that Baltimore County's Permits Department and the Office of the Zoning Commissioner were not "persons" within the meaning of a 42 U.S.C. § 1983 claim). Additionally, under the enabling legislation and MOU discussed, *supra*, it is Dorchester County, which is not a party, that has the authority to sell the Property pursuant to a tax sale.  The Department of Finance has no such authority independent of the County. Therefore, summary judgment should be granted with respect to the Dorchester County Department of Finance.

**B.     Vienna Maryland is Not a Proper Party and Does not Have the Authority to Put Petitioner's Property Up for Tax Sale.**

In the context of this case, Petitioner seeks to have this Court issue an injunction against the Town of Vienna to prevent the sale of his property.  The Town of Vienna has no authority to sell the Property.  Dorchester County, <u>which is not a party to the present</u>

<u>action</u>, is the entity charged by law and the MOU to collect the past due amounts. *See* § 9-724 of the Environment Article (stating that liens for past due water bills are collectable in the same manner as taxes in the County); Ex. 15 (§ 107-1.B of the Dorchester County Code stating that past due water bills are first liens and collectible in the same manner as real property taxes); Ex. 6 (MOU requiring the County to reimburse the Town for the past due water bills and placing the burden of collection on the County). **As far as the Town is concerned, the water bill at issue has been paid by the County pursuant to the provisions of the MOU.**

At the end of calendar year 2012, The Town turned the past due amounts over to the County and the County reimbursed the Town. *See* Exhibits 12, 13 &14. As such, an injunction issued by this Court against the Town of Vienna would be meaningless as it would not prevent, halt or have any effect on the alleged harm Petitioner seeks to enjoin. The Town of Vienna does not have any control over the sale of Petitioner's Property. Even if one accepts as true the allegation that Petitioner was not informed of the potential penalty for not paying his water bill and that somehow the Town of Vienna is responsible for not informing him, it was mandatory that his property be connected to the Town's water supply for public health reasons. Additionally, at the time of connection he did not have an ownership interest in the Property.

### C. Individual Defendants are Not Proper Parties.

The Petition for Injunctive Relief does not assert that the Individual Defendants

18

committed any wrong.[17]  It also does not contain any explanation as to how enjoining the Individual Defendants would prevent the harm alleged.  On this basis alone, summary judgment should be granted in favor of the Individual Defendants.

Additionally, the Individual Defendants (three Town Commissioners, the Town Clerk and the Town's Code Enforcement Officer) have no authority to sell Petitioner's property.  As such, an injunction issued by this Court against the Individual Defendants would be meaningless as it would not prevent, halt or have any effect on the alleged harm Petitioner seeks to enjoin.  The Individual Defendants do not have any control over the sale of Petitioner's Property.  Even if one accepts as true the allegation that Petitioner was not informed of the potential penalty for not paying his water bill and that somehow the Individual Defendants are responsible for not informing him, it was mandatory that his property be connected to the Town's water supply for health related reasons.  Additionally, the property was connected prior to Petitioner taking ownership of the property.  Therefore, the Individual Defendants are entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Defendants request that this Court grant summary judgment in their favor and any such other relief as the cause may demand.

---

[17] The "Individual Defendants" are Mayor Russell Brinsfield, Commissioner Pam Travers, Commissioner Greg Cusick, Secretary Marcia Gosnell and Code Enforcement Officer Mary Jane Marine

KARPINSKI, COLARESI & KARP

BY:   _____/s/_____
KEVIN KARPINSKI, #11849


_____/s/_____
E.I. CORNBROOKS, IV, #28296
Suite 1850
120 East Baltimore Street
Baltimore, Maryland 21202
410-727-5000
Kevin@bkcklaw.com
Scornbrooks@bkcklaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April 2015, a copy of the foregoing was

electronically filed and a copy sent by first class mail, postage prepaid to:

John Jackson
4853 Old Route 50
Vienna, Maryland 21869
*pro se Petitioner*


_____/s/_____
Of Counsel for Defendants